## HOWE & CO. v. JONES ET AL.

1. **Garnishment**: INTERVENTION. In this case, *held*, that the plaintiff, by garnishment proceedings, acquired only the title and interest in the property held at the time by the defendant in the action; that a prior lawful assignment would hold the property; and that persons having any interest in the property might intervene.

2. ———: ASSIGNMENT. Want of notice of the assignment of a cause of action will not prejudice a garnishee defendant, previously discharged.

3. ———: ———: POSSESSION. The provisions of section 1923, Code, do not apply to the assignment of a chose in action, where the owners hold only the possession of a right.

4. ———: JUDGMENT DEBTOR. The garnishment of a judgment debtor, under section 2976, Code, does not affect the rights of claimants, but simply the liability of the garnishee.

5. ———: ASSIGNMENT: VARIANCE: FRAUD. The variance of evidence as to the consideration for an assignment, and evidence of fraud in the assignment considered: *Held*, not sufficient to defeat the assignment.

6. ——: ——: STATUTE OF FRAUDS. The parol assignment, clearly and fully established, of a chose in action, as the portion of a judgment, is sufficient. It is not rendered void by section 1923, Code, nor is it, where payment is shown, within the statute of frauds.

7. ——: APPOINTMENT OF RECEIVER: NOTICE. The appointment of a receiver in vacation, and without notice to the adverse party, was erroneous.

*Appeal from Marshall District Court.*

TUESDAY, OCTOBER 25.

ACTION in chancery. There was a decree granting the relief prayed for in plaintiff's petition. The intervenors, S. Binford & Caswell and Meeker, appeal. The facts of the case appear in the opinion.

*Caswell & Meeker*, for appellants.

*Brown & Binford* and *Boardman & Carney*, for appellees.

BECK, J.—I. In an action between Binford and others, plaintiffs, and Boardman and others, defendants, in the Marshall District Court, a decree was rendered requiring defendant Boardman, to deliver certain notes held by him as collaterals, to plaintiffs. Upon appeal to this court, the decree of the District Court was affirmed September 20, 1876. The further facts and proceedings in the action need not be stated, as they cut no figure in this case.

On the 9th day of April, 1877, the plaintiffs, being two mercantile firms, filed their petition in this case, showing the judgment and the proceedings in the action above referred to, and alleging that Boardman had delivered to the clerk of the court the notes involved in the former action, and required to be delivered to plaintiffs therein, and has also paid to the clerk certain moneys and costs provided for by the decree in that case, and that the clerk is about to pay over the notes and money to the plaintiffs in the former action, or to other parties not

entitled thereto.  It is also shown that after the decision of the former action in the Supreme Court, the plaintiffs caused Boardman to be garnished upon certain judgments before recovered by plaintiffs separately in the District Court of Marshall county, who answered, stating that he had in his possession the notes in question, which he was about to deliver to the clerk of the court.  It appears that subsequently to this garnishment of Boardman, he delivered the notes to the clerk, as shown by the petition.

The petition further shows that many of the notes are worthless, and those that are good must be collected by proceedings at law.  It is alleged that plaintiffs have demanded the notes of the clerk, who refuses to deliver them unless ordered by the court.  The petition prays that a receiver be appointed, and that he qualify by giving bond in the sum of $3,000; that the clerk be required to deliver to him the notes, which the receiver shall proceed to collect, and that upon the final hearing the plaintiffs be adjudged to be the owner thereof.

After the petition was filed, the plaintiffs herein, who are also plaintiffs in the garnishee proceedings against Boardman, under Code, section 2861, agreed to and caused to be entered a judgment in that proceeding, wherein Boardman was ordered to deliver to the clerk of the court the notes and money in his hands; to be held by the clerk or receiver, subject to the further orders of the court, and it was adjudged that upon his compliance with the order, Boardman should be discharged as garnishee.  It is shown, that prior to this judgment, the notes and moneys in question were turned over to the clerk, a part thereof upon the day of the filing of the petition in this case, and a part soon after.

On the 10th day of April, the day after the petition was filed, the judge of the District Court at chambers appointed Boardman receiver, pursuant to the prayer of the petition, and it appears that immediately thereafter, the clerk re-delivered

the notes and moneys to Boardman, as receiver.  No notice of the application for the appointment of a receiver was given to the parties adversely interested.

During the first term, after this action was commenced, Samuel Binford filed his petition in intervention, alleging that Binford & Brother, plaintiffs in the original action, assigned to him on the 28th day of April, 1875, the notes and moneys in controversy, and the judgment rendered against Boardman. It is shown that the consideration of this assignment was the reimbursement of the intervenor for whatever amount he had paid or should be required to pay upon a note given by Binford & Bro., upon which he was surety.  This assignment, the intervenor alleges in his petition, was to be subject to the claim of the attorneys in the original suit for the services rendered therein.  It is alleged that the intervenor had paid $600 upon the note upon which he was surety as aforesaid.  He asks that he may be allowed to intervene in this proceeding, and that his interest in the judgment and notes be declared superior to plaintiffs' claim, and subject only to the claim of the attorneys for services in the original action.

Caswell & Meeker also filed a petition of intervention, showing that they were the attorneys of Binford & Bro. in the original action, and rendered services therein of great value; that they filed liens upon the judgment for their services; and that in June, 1876, by an oral agreement Binford & Bro. transferred and assigned to them $1,000 of the judgment, or of the collectible notes which Boardman was to turn over under the judgment to secure intervenors for services rendered and to be rendered in the litigation between Binford & Bro. and Boardman.  It was agreed that, if the fees of the intervenors should prove to be worth less than $1,000, they should repay to Binford & Bro. the difference between their value and $1,000.  They ask that their interest in and claim to the notes be enforced by proper judgment.

Binford & Bro. also filed a petition of intervention. It need not be further noticed, as they do not unite in the appeal.

All of these intervenors united in a motion to discharge the receiver, upon the ground that the order appointing him was made upon insufficient showing, and without notice to the parties having adverse interest to the plaintiffs in this action; that the receiver is an improper person to receive the appointment; and for other reasons that need not be here stated.

It will be observed that the intervenors, Samuel Binford, and Caswell & Meeker, between whom there is no conflict, claim an interest in the money and notes involved in this action under certain transfers and assignments set out in the pleadings. The plaintiffs claim the same property under the garnishment process against Boardman, and they further claim that the property is lawfully in the hands of the receiver for their benefit. The notes and money have never reached the hands of plaintiffs, but are now in the hands of Boardman as receiver.

II. We will consider first the claim and interest which plaintiffs have in the property. It will be readily seen that 1. GARNISH- their claim is based wholly upon the garnishee MENT : inter- vention. proceedings. Boardman had possession of the property which the court declared in the original proceeding belonged to Binford & Bro., and ordered it to be returned to them. Boardman answered that he had the property in possession. It was by him turned over to the clerk, and by an agreed judgment he was discharged as garnishee. This was all proper enough, for surely the garnishee could be discharged upon surrendering the property to the custody of the law. For this the agreed judgment provides. It also declares that the property shall be subject to the further order of the court. Now the service of the garnishment, the answer of Boardman, and the judgment, did not determine the right of plaintiffs to the property as against the intervenors or others. The pro-

ceedings, up to and including the judgment, had no other effect than to seize the property in the hands of Boardman and transfer it to the custody of the law. There was no adjudication that plaintiffs should take the avails of the property. On the contrary, the judgment provides that it is to be held subject to further orders of the court, which plainly means that all rights thereto are to be settled by further adjudication in the case.

This certainly was the understanding of plaintiffs, for when they found it in the hands of the clerk, they did not seek to gain possession of it by any process or proceeding, but filed the petition in this case asking for the appointment of a receiver, who shall have power to collect the notes, and praying that upon the final hearing plaintiffs may be adjudged to be the owners of the notes. The notes and money were delivered to the receiver, in whose hands they now are. Now, until the decision of this case in the court below, there was no adjudication that the plaintiffs were entitled under the garnishee proceedings to the property. When the intervenors filed their petition plaintiffs had acquired no right by adjudication to the property. At that time they and plaintiffs stood on equal grounds before the court, pressing their respective interests and claims in and to the property.

If the property at that time had been lawfully assigned and transferred to the intervenors they will hold it, for the plaintiffs can only acquire the title and interest held by the defendants in the action wherein the garnishee process was issued. *Thomas v. Hillhouse*, 17 Iowa, 67; *Manny & Co. v. Adams*, 32 Iowa, 165.

Code, section 3016, provides as follows: " Any person other than the defendant may, before the sale of any attached property, or before the payment to the plaintiff of the proceeds thereof, or any attached debt, present his petition, verified by oath, to the court, disputing the validity of the attachment, or stating a claim to the property or money, or to an interest in,

or lien on it, under any other attachment, or otherwise, and setting forth the facts upon which such claim is founded, and the petitioner's claim shall be, in a summary manner, investigated. The court may hear the proof, or order a reference, or may impanel a jury to inquire into the facts. If it is found that the petitioner has title to, a lien on, or any interest in such property, the court shall make such order as may be necessary to protect his rights. The cost of such proceedings shall be paid by either party, at the discretion of the court."

This provision clearly contemplates that any claim, lien, interest or title in and to the property attached may be set up at any time before the proceeds are paid to the plaintiff in attachment. The process of attachment or garnishment, and the sale of the property, did not defeat such claim, lien or title. The section quoted provides a remedy by a summary proceeding. The right is not lost if this remedy be not pursued, if the parties seek other proper remedy. Certainly, if, as in the case before us, the plaintiff in attachment seeks by action in chancery, to establish his right to the proceeds of the property attached, persons holding a claim upon the property may interpose. The plaintiff cannot call upon the court in an equitable action to establish his right and deny the right of others to appear and establish claims thereto. Their action was a challenge to the world to contest their right and show a superior claim to the property, for any one having an interest in the property could become a party thereto. Code, § 2683.

We conclude that if the intervenors had a valid interest in the notes and money which had been reached by the process of garnishment, and brought into the custody of the law, they may set it up and recover in this proceeding, if their interest be superior to the claim of plaintiffs.

We are therefore required to determine the conflicting claims of the parties to the notes and money in the custody of the receiver as an officer of the court. We will first consider the interest of Samuel Binford in the property in controversy.

III. Binford & Bro. executed an assignment of their judg-

*2. ——— : assignment.* ment against Boardman and the notes in controversy to Samuel Binford of which the following is a copy:

"We hereby sell and assign to Samuel Binford all our right, title, and interest in and to the claim and cause of action and judgment against H. E. J. Boardman and D. P. Carpenter— the same being now pending in the Supreme Court of Iowa, in an action appealed from the Marshall county District Court. Also, all our right and interest in and to all promissory notes now or formerly held by said Boardman as collateral security or otherwise, and now belonging to us, or the proceeds thereof. The consideration of the above assignment is the signing of a note with us by said S. Binford, as surety, for $1,000, given to Benjamin Williams in November, 1873, and the payment of a portion of said note by said S. Binford.

"BINFORD & BRO., per R. Binford.

"Dated April 28, 1875."

It will be observed that this instrument was executed after judgment in the original case had been rendered and before the decision in the Supreme Court.

No questions as to notice to Boardman of the assignment arises in the case. As we have seen he has been discharged from liability by delivering the notes and money to the custody of the court. The cases therefore which relate to notice to the garnishee which affect his liability are not applicable to this case. Boardman cannot be prejudiced by want of notice.

IV. Counsel for plaintiffs insist that the assignment in question cannot affect their rights for the reason that they had

*3. ——— : ———: possession.* no notice thereof, and the instrument was not acknowledged and recorded. This position is based upon Code, section 1923, which is in the following language:

"No sale or mortgage of personal property where the vendor

or mortgagor retains actual possession thereof, is valid against existing creditors or subsequent purchasers, without notice, unless a written instrument conveying the same is executed, acknowledged like conveyances of real estate, and filed for record with the recorder of the county where the holder of the property resides."

This provision applies to the case wherein the vendor or mortgagor retains actual possession of the property. Upon reflection it will appear that the subject transferred in the assignment was not in the possession of the assignors. This cannot be questioned so far as the instrument may be regarded as transferring an interest in the notes, for they were not in the possession of the assignors, but at the time, and have since been in the hands of Boardman. Let us consider the instrument as an assignment of the judgment against Boardman. The thing, the property transferred, is the chose in action, evidenced by the judgment. It cannot be said that the assignors in the instrument were in possession of the chose in action. They had a right to the money or notes which were in the possession of Boardman. This property was in action and is called a chose in action because the holder has not its present possession.

The section of the Code contemplates the property itself, not the right to it; therefore it cannot be said that the assignors retained the possession of the right. By the transfer they, in fact, parted with the possession of the right.

The judgment, as it appears upon the record of the court, is not the chose in action, but the evidence thereof. But should it be thought that it is the chose in action, and the property which was transferred by the assignment, it must be admitted that its actual possession was not retained by the assignors, for they neither before or after the transfer had possession of the judgment. We conclude that the transfer under consideration is not within the section of the Code above quoted.

V. Code, section 2976, provides that a judgment debtor may be gárnished " when the judgment has not been·previously assigned on the record or by writing filed in the office of the clerk, and by him minuted as an assignment upon the margin of the judgment docket." This provision does not affect the rights of the claimants of property or money in the hands of the garnishee. It simply relates to his liability. As we have seen, after the garnishee answers and delivers the money and property into the custody of the court, the right to the property may be contested by claimants thereto. Intervenors in this case are not defeated of their claims to the property by this section.

4. ——: judgment debtor.

VI. Counsel for plaintiff insist that Samuel Binford cannot recover in this action for the reason that the proofs fail to show the payment referred to in the assignment as the consideration thereof. The ground of this objection is that the evidence shows payment upon a note dated in 1872, while the assignment designates a note dated in 1873.

5. ——: assignment: variance: fraud.

The instrument shows that payment was made by S. Binford as the surety of the assignors, which was the consideration of the assignment. The proof shows the payment to have been made by S. Binford as surety on a note of a different date from the one described in the assignment. Surely it cannot be expected that a court of equity will defeat the assignment on this ground. The intervenor has, in fact, paid the money which is the consideration of the assignment. He cannot be defeated because either in the assignment or proof there is a mistake as to the date of the note or for the reason that the payment was upon a note other than the one referred to in the assignment, the intervenors being surety on both.

VII. Plaintiffs insist that the assignment to Samuel Binford was collusive and fraudulent, and therefore void. To support this position counsel insist: 1st. That the transaction was secret. The secrecy complained of consists in a failure of

Samuel Binford to make it known to Boardman.    One of the notes in controversy held by Boardman is against Samuel Binford.  This circumstance is urged as a reason why the assignment should have been made known to Boardman.    If the assignment was relied on as a defense to this note, it may be true that Boardman should have had notice thereof.    But nothing of the kind is shown by the evidence.  We are unable to reach the conclusion that failure to notify Boardman authorizes the conclusion that the transaction was fraudulent.

2.  It is next insisted that Samuel Binford was not present when the assignment was executed.    But the testimony shows the fact to be that it was made pursuant to agreement before entered into between the parties.

3.    Binford & Bro. afterwards assigned the judgment upon the court docket to one who had no knowledge of the transaction, and afterwards repudiated it.    It is not shown that S. Binford had any knowledge of this transaction, or in any way participated therein.    If it was fraudulent on the part of Binford & Bro., it is not shown that S. Binford shared their intentions and purposes.

4.    It is urged that Samuel Binford made no payment as surety after the assignment was made; the payments were made before.    The assignment itself and the intervening petition show this to be the fact.  We fail to see that it establishes fraud.

VIII.    We will now proceed to consider the assignment to Caswell & Meeker.    It is shown that these intervenors were the attorneys of Binford & Bro. in prosecuting the litigation with Boardman; that Binford & Bro. agreed "to turn over" the judgment to secure the attorneys' fees, and in pursuance of this understanding soon after the decision of the case in the Supreme Court they did by an oral agreement assign and transfer $1,000 of the judgment to the intervenor.

A parol assignment of a chose in action is sufficient.  *Moore*

*v. Lowrey,* 25 Iowa, 335; *Bartrol v. Blakin et al.,* 34 Iowa, 452; *Switzer v. Smith et al.,* 35 Iowa, 269.

IX. The plaintiffs insist that the evidence fails to show that this assignment relied upon by the intervenor was ever, in fact, made. They base their position upon various grounds which we need not state. It is sufficient for us to say that the oral agreement is clearly and fully established by the positive testimony of all the parties thereto, four witnesses. The inferences from circumstances relied upon by plaintiffs cannot overcome the evidence of these witnesses.

X. It is urged that the assignment is void under Code, section 1923, for the reason that the assignors retained actual possession of the property assigned. The same objection is considered in the foregoing discussion of the claim of Samuel Binford, and held not to be well taken. What we have said upon the point need not be repeated; it is applicable to this branch of the case.

XI. It is argued by counsel that the assignment being in parol, is within the statute of frauds. Code, § 3664, paragraph 4. It is insisted that the intervenors made no payment upon the assignment. The testimony is to the effect that the assignment was taken in payment of services rendered and to be rendered by the assignees. But plaintiffs say the books of the assignees do not show credits for the payment and the charges stand without a credit. Surely, the failure to credit the assignors upon the books of the assignees would not defeat their positive agreement to accept the assignment in payment for services already rendered.

XII. By agreement between Samuel Binford and Caswell & Meeker, the interest which the party last named acquired under the assignment to them was to be prior to the interest acquired by Samuel Binford. This arrangement was concurred in by Binford & Bro., and as plaintiffs are not prejudiced thereby, it must be enforced.

XIII. The evidence as to the amount due to Caswell &

Meeker for services, for the payment of which the assignment was made, is conflicting, and it is not as clearly presented as it ought to be, either in the abstract or amended abstract. We think the preponderance of the testimony supports the claim for $810, and accordingly adopt that as the sum to which they are entitled.

XIV. The receiver was appointed in vacation, without notice to the adverse parties. This was erroneous, and the action of the court, because of want of notice, required by law, cannot be sustained. Code, § 2903. *French v. Gifford*, 30 Iowa, 148; *Bisson v. Curry*, 35 Id., 72. Other questions discussed by counsel need not be considered.

7. ——: appointment of receiver: notice.

XV. The decree of the District Court must be reversed, and the cause must be remanded to the court below for a decree in harmony with this opinion. Such a decree will provide that the order of the court, appointing the receiver, be set aside, and that the receiver deliver to the clerk of the District Court all moneys, notes, or other property received or held by him under the receivership. It will further provide that the intervenors, Caswell & Meeker, receive therefrom $810, with interest from April 21, 1879, at six per centum per annum, and that the intervenor, S. Binford, after the payment to the other intervenors, shall receive the balance of the money or whatever may remain of the notes and assets in controversy in this action, or their proceeds.

REVERSED.

### SUPPLEMENTAL OPINION.

BECK, J.—I. A petition for a rehearing was filed by plaintiffs, which directs our attention to some points of the opinion that may be made plainer by a brief additional consideration. Counsel object to the conclusion of the 11th point of the opinion, and insist that there was no payment for the judgment by the intervenors, which takes the transaction out of the operation of the statute of frauds. Facts upon which our conclusion

announced in this point is based, are stated in the 8th point, and in other parts of the opinion, as well as in the 11th point itself. The record warrants the statement of another fact which does not clearly appear in the opinion, namely: services of the intervenors, Caswell & Meeker, were rendered under an agreement that they should be paid for by the assignment of the judgment. This agreement was first made during the progress of the litigation, and before. all the services were rendered. Upon this agreement the intervenors relied for compensation of their services, before and afterward rendered. If "A," who is in the employment of "B," agrees to accept as compensation for past and future services, specified personal property, and if, in fulfillment of this agreement, "A" completes the services, and "B" thereupon orally transfers the property without delivery, the transaction will not be within the statute of frauds. There is a contract for services, to be paid for by the transfer of personal property. When the transfer is made, the law will regard that payment has been made for the property. This is the precise case before us. Our conclusion does not require the citation of authorities in its support.

II. Counsel for plaintiffs, in their original argument, insisted that the evidence failed to show "a setting apart, as required by law, of such part as they bought of a judgment, which called for notes, face, say $1,500—a part of which were worthless—and cost $180.87; and costs, say $300, not then taxed, a part of which were ordered taxed to the Binfords." We have stated counsel's position in their own language. They complain that it is not noticed in our opinion. It will be observed that intervenors claim under an assignment of the judgment to the extent of $1,000. There was no assignment of notes, costs, etc. The assignment sufficiently sets apart the portion of the judgment, $1,000, transferred.

III. It is urged, in the petition for a rehearing, that the intervenors, who alone appeal, cannot complain of the erro-

neous appointment of the receiver. It is very plain that the rights and interests of the intervenors were affected by the appointment of the receiver. They intervene in this action to enforce their rights, and become parties thereto. Code, § 2683. As parties to the action, they may object to the appointment of the receiver, as being prejudicial to their interest and rights.

We need not consider other matters discussed in the petition for a rehearing; it is overruled.