EL TESORERO DE PUERTO RICO, *v.* EL BANCO COMERCIAL DE PUERTO RICO. SAMUEL ROSEMBLUM INC., interventora y apelada, y ANTONIO R. HERNÁNDEZ, Administrador Judicial del Banco Comercial de P. R., opositor y apelante. EL MISMO *v.* EL MISMO. C. M. VAN SILLEVOLDT INC., interventora y apelada, y EL MISMO, opositor y apelante.

Nos. 6283 y 6284.—*Sometidos:* Marzo 13, 1933. *Resueltos:* Marzo 24, 1933.

*Félix Ochoteco, Jr.,* abogado del apelante; *H. G. Molina,* abogado de las apeladas; *Hon. Charles E. Winter, Procurador General,* abogado del Tesorero de Puerto Rico; *José R. Ramírez Santibáñez,* abogado del Banco Comercial y *Carlos J. Torres,* como *amicus curiae.*

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

C. M. Van Sillevoldt Inc. y Samuel Rosemblum Inc. remitieron desde Nueva York al Banco Comercial de Puerto Rico varias facturas comerciales contra comerciantes en Puerto Rico, con los conocimientos de embarque de las mercancías en las facturas mencionadas y certificados de seguro unidos a las mismas, así como giros contra los compradores por el importe de dichas facturas. Estos giros fueron remitidos al Banco Comercial para su cobro y para remitir una vez cobrados el importe de los mismos a las apeladas en Nueva York en la forma bancaria corriente después de deducida la comisión correspondiente por tales servicios. El Banco Co-

mercial cobró giros de S. M. Van Sillevoldt Inc. por un importe de $3,599.39, y de Samuel Rosemblum Inc. por un importe de $950.12, y expidió los correspondientes cheques a favor de las referidas corporaciones sobre The Irving Trust Company los cuales llegaron a Nueva York el mismo día o al día siguiente de haberse declarado en suspensión de pago el Banco Comercial y haberse nombrado el síndico en el presente caso, por cuyo motivo no se hicieron efectivos los ameritados cheques. Cuando el Banco Comercial hizo estos cobros, tenía un efectivo en caja que excedía de $30,000 y nunca tuvo menos de dicha suma en caja desde la fecha de haber cobrado los giros de las apeladas hasta la fecha en que se nombró al Síndico y tomó éste posesión de la propiedad.

A la luz de estos hechos, los cuales fueron aceptados como ciertos por el Síndico, las apeladas alegaron que el importe de sus giros constituía un "trust fund" en poder del Banco Comercial y que así pasaron a poder del Síndico, viniendo éste obligado a pagar y devolver a las apeladas las sumas anteriormente mencionadas, con preferencia al pago de cualquier otra obligación o crédito del Banco Comercial, ya que dichas sumas pertenecían a las peticionarias C. M. Van Sillevoldt Inc. y Samuel Rosemblum Inc. respectivamente y no eran propiedad del Banco Comercial.

Sometido el caso a la corte, ésta dictó resolución declarando con lugar la preferencia de crédito y ordenando al Síndico a pagar inmediatamente a las apeladas las sumas por las mismas reclamadas, con intereses al 6 por ciento anual, debiendo dicho Síndico verificar los pagos de los fondos que tenía en su poder en virtud de la administración judicial.

Contra esta orden de la corte promovió recurso de apelación el Síndico del Banco Comercial y ahora comparecen las apeladas para solicitar que se desestime la apelación, entre otras razones por no ser apelable la referida orden.

█ El derecho de apelación es puramente estatutario y esta corte no puede adquirir jurisdicción a menos que la parte apelante esté autorizada por la ley para interponer el recurso.

■ El artículo 294 del Código de Enjuiciamiento Civil dispone que cualquier parte agraviada por una resolución judicial podrá apelar en los casos previstos en el código. ¿Puede el síndico ser considerado como parte agraviada en este caso en que el banco reconoce haber cobrado el giro y expedido cheques para satisfacer su importe? Es claro que no se trata de una reclamación contra los fondos del Banco en general. No hay duda alguna de que el Banco debe la cantidad que se le reclama. La orden de la corte no aumenta ni disminuye el activo de la institución bancaria; únicamente dispone que se pague a las apeladas una deuda que ha sido reconocida.

En el caso de *State* v. *State Bank & Trust Co.*, 137 Pac. 402, la Corte Suprema de Nevada, luego de copiar el artículo 5327 de las leyes revisadas de dicho estado, equivalente al 294 de nuestro Código de Enjuiciamiento Civil, dice entre otras cosas lo siguiente:

"Un síndico nombrado por una corte para cobrar el activo de una institución insolvente y para que administre sus negocios no puede decirse que está personalmente interesado en la segregación o distribución de los fondos que, debido a sus actividades o al cumplimiento de sus deberes, vienen a su poder, a menos que él ocupe una posición doble de acreedor y síndico, caso en el cual su derecho a apelar como acreedor de una resolución o decreto de la corte inferior podría sostenerse en la teoría de que, estando interesado en la distribución o prorrateo de los bienes, él podría solicitar mediante apelación o recurso de revision un mandato de la corte superior para hacer cumplir un derecho del cual pudo ser privado por la corte inferior o para relevarle de un daño infligídole. Como síndico, actuando en su capacidad oficial, y no teniendo interés personal, él queda obligado por las órdenes de la corte de que él es representante, cuando esas órdenes afectan solamente aquellas partes que con motivo de su relación como acreedores están interesadas en la distribución equitativa de los bienes, y que en forma alguna le perjudican.

"Si un síndico en un caso de esta naturaleza puede apelar de una resolución cuyo resultado no le afectaría personalmente, ¿no tendría él igualmente derecho a apelar de cualquier resolución y en su consecuencia a aumentar sus gastos y a multiplicar los honorarios de abogado en perjuicio de los acreedores legítimos, disminuyendo así innecesariamente los bienes de la extinta institución? En el caso de

Chicago Title & Trust Co., Síndico de The Jas. J. Walker Co., v. Jos. Caldwell, 58 Ill. App. 219, la Corte de Apelaciones de Illinois al resolver idéntica cuestión se expresó así: 'No podemos sancionar aun con nuestro silencio la idea de que un síndico puede suscitar en oposición a la corte sus teorías respecto a cómo debe distribuirse el activo. Entonces tendríamos que los secretarios podrían apelar de decretos de las cortes en que se les ordena registrar resoluciones que a su juicio son incorrectas'.''

En el caso de *Bosworth* v. *Terminal Association*, 80 F. 969, 26 C. C. A. 279, un síndico apeló de un decreto en que se concedió preferencia a una reclamación por suministro de abastos sobre la deuda garantizada por la hipoteca en curso de ejecución. La corte dijo:

''Creemos que la verdadera línea de demarcación es la siguiente: El síndico tiene derecho a apelar con respecto a cualquier reclamación presentada por la institución o contra ella, toda vez que él es el representante de la institución en general. Tiene derecho a apelar de cualquier decreto que afecte sus derechos personales, ya que en éstos él está interesado. Mas no tiene derecho a apelar de un decreto que declara los derechos respectivos de las partes en el litigio. Respecto a éstos debe mostrarse indiferente e imparcial. El tiene deberes para todas las partes en común. No debe ser el defensor de una contra otra . . . ¿ Qué deber le ha sido impuesto para que haga valer el supuesto derecho de un acreedor sobre el de otro con respecto a un fondo común? . . . Sancionar tal actuación es alentar litigios vejaminosos a expensas de la institución, que tienen que ser acarreados por las partes interesadas.''

En el caso de *Knabe* v. *Johnson*, 69 Atl. 420, la Corte de Apelaciones de Maryland, refiriéndose al caso de *Bosworth* v. *Terminal Association* que acabamos de citar dijo:

''En dicho caso, al igual que en el caso ante nos, el síndico solicitó permiso para apelar, que le fué concedido por la corte y allí se sostuvo, al igual que aquí, que él solamente puede apelar de conformidad con la autoridad y de acuerdo con el mandato de la corte, y por tanto debe oírse y resolverse la apelación. Pero la Corte de Circuito de Apelaciones en dicho caso resolvió, según creemos correctamente que 'no puede sancionarse la doctrina de que el conceder una apelación puede investir al síndico de interés que él no tiene, o

imponer a una corte de apelaciones el deber de oír y resolver una cuestión académica.' ''

En el caso de *State* v. *Miller,* 135 N. W. 196, la Corte Suprema de North Dakota se expresó en los siguientes términos:

''El síndico no alega que él mismo es un acreedor. La orden no envuelve la concesión o negativa de compensación o gastos del síndico como tal y se refiere solamente a los derechos relativos de los acreedores de la firma insolvente. El síndico es un funcionario de la corte y persona indiferente en lo que a los acreedores entre sí concierne. Hoffman v. Bank of Minot, 4 N. D. 473, 61 N. W. 1031. El no tiene derecho a irse en favor de un acreedor o en contra de otro. Tiene la orden de la corte como una protección, y si los derechos de cualquier acreedor fueran afectados adversamente por tal orden, o si fuera probable que fuesen afectados, ese acreedor podría dar los pasos necesarios para incoar una apelación. La orden no tiene el efecto de aumentar ni disminuir el activo del banco insolvente sino que se dirige solamente a los derechos relativos de los acreedores en la distribución del activo, y en este asunto el síndico no tiene interés, y en su consecuencia no puede incoar una apelación contra la orden de la corte de distrito a ese efecto.''

Véase también el caso de *First National Bank* v. *C. Bunting & Co.,* 59 Pac. 929.

Bancroft, en el tomo quinto, pág. 5525, de su obra ''Code Practice and Remedies,'' párrafo 4209, dice:

''Por regla general el síndico no puede apelar de una orden o decreto de la corte en que se distribuye el activo que está en su poder o que meramente determina los derechos relativos de los acreedores. Pero en vista de que él representa todas las partes interesadas, no solamente los acreedores sino también la deudora, o cuando se trata de una corporación los accionistas, él debe ser diligente y proteger la institución contra reclamaciones dudosas. Si bien el síndico no puede tomar parte en las cuestiones suscitadas por los acreedores que alegan tener intereses adversos contra la institución, debiendo ellos apelar a nombre propio al considerarse perjudicados, sin embargo debe permitírsele apelar en cualquier caso en que la institución tiene interés, a beneficio de todas las personas por él representadas. Sin embargo, por lo general él debe obtener primeramente permiso de la corte que le nombró, y si apela en un caso, en que no tiene interés personal, sin tal permiso, la apelación puede ser desestimada a costa suya.''

La jurisprudencia citada demuestra claramente que el sín-
dico no tiene derecho a apelar en aquellos casos en que los
intereses que tiene bajo su custodia no han sido afectados.
No resultando el síndico una parte agraviada por la sentencia
apelada, ya en su carácter personal o en representación de
los bienes bajo sindicatura, *entendemos que debe desestimarse
el recurso de apelación interpuesto por el referido síndico.*